**No. 16 - 3786**

_____

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**
_____

KELLY FUERY, DEBRA SCIORTINO,    )
and NICOLE TOMASKOVIC,    )
    )
        Plaintiffs-Appellants,    )
    )
v.    )
    )
CITY OF CHICAGO, et. al.,    )
    )
        Defendants-Appellees.    )
_____

**Appeal from the United States District Court
For the Northern District of Illinois, Eastern Division,
Case No. 07-C-5428
The Honorable Judge Sara L. Ellis**
_____

**BRIEF OF THE DEFENDANT-APPELLEE
WILLIAM SZURA**
_____

GOTTREICH GRACE & THOMPSON
Attorney James E. Thompson
Attorney for the Defendant-Appellee
William Szura

GOTTREICH GRACE & THOMPSON
311 W. Superior Street
Suite 215
Chicago, Illinois
(312) 943-0600

**CIRCUIT RULE 26.1     DISCLOSURE STATEMENT**

Appellate Court No:_____16-3786_____

Short Caption:_____Fuery, et. al., v. Chicago, et. al.,_____ __

     To enable the judge to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition or answer in this court, whichever occurs first.  Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in front of the table of contents of the party's main brief.  Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

     [  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW
           OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    William Szura
_____
_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gottreich Grace & Thompson
    The Law Offices of Joseph V. Roddy
_____

(3)    If the party or amicus is a corporation:

    i) Identify all its parent corporations, if any; and

    N/A
_____
    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

    N/A
_____

Attorney's Signature:/s/ James E. Thompson          Date: 11/6/17
Attorney's Printed Name: James E. Thompson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes X**   **No ___**

Address:     311 W. Superior Street, Suite 311
           Chicago, Illinois 60654

Phone Number:  (312) 943-0600          Fax  Number: (312) 943-7133

E-Mail Address:  JThompson@ggtlegal.com

# TABLE OF CONTENTS

Table of Contents ..................................................................................................1

Table of Authorities ............................................................................................2

Jurisdictional Statement ....................................................................................4

Statement of the Issues.......................................................................................6

Statement of the Case..........................................................................................7

Summary of Argument .....................................................................................18

Argument ...........................................................................................................19

      I.      Standard of Review.........................................................................19

      II.     Whether the district court had jurisdiction to enter a post-trial judgment against the Plaintiffs under the court's inherent authority to impose sanctions on litigants for the bad-faith conduct of the litigants and their attorney at trial ...............................20

      III.    Whether the district court's finding that Plaintiffs and their attorney engaged in willful and bad faith misconduct is supported by a preponderance of the evidence .....................................20

      IV.    Whether the Plaintiffs and their attorney had adequate notice and an opportunity to respond before the district court's imposition of judgment as a sanction under the court's inherent authority ....................................................................26

      V.     Whether the Plaintiffs' motion for a new trial is rendered moot by the entry of judgment against Plaintiffs.............................27

      VI.    Whether the district court committed trial error that affected the outcome of the trial ........................................................27

Conclusion .........................................................................................................30

Certificate of Compliance with FRAP Rule 32(a)(7),
FRAP Rule 32(g), FRAP Rule 32(c) .................................................................31

Proof of Service .................................................................................................32

# TABLE OF AUTHORITIES

## CASES

*Aliotta v. National Railroad Passenger Corp.*,
315 F.3d 756, 759 (7th Cir. 2003) ....................................................................20

*Ammons-Lewis v. Metropolitan Water Reclamation District of Greater Chicago*,
488 F.3d 739, 751 (7th Cir. 2007) ...............................................................28, 29

*Chambers v. NASCO, Inc.*,
501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)..............20, 26, 27

*Condon v. Am. Tel. & Tel. Co., Inc.*,
136 Ill. 2d 95, 99, 554 N.E.2d 206, 208 (1990).........................................27

*Cornucopia Inst. v. U.S. Dept. of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009)..............27

*Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003) ....................................24

*General Electric Co. v. Joiner*,
522 U.S. 136, 139 L.Ed.2d 508, 118 S.Ct. 512, 517 (1997).............................28

*Goodyear Tire & Rubber Co. v. Haeger*,
137 S. Ct. 1178, 1184, 197 L. Ed. 2d 585 (2017)..........................................20

*Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) ..............24

*Link v. Wabash R. Co.*,
370 U.S. 626, 630, 82 S. Ct. 1386, 1389, 8 L. Ed. 2d 734 (1962)....................19

*Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 223 (7th Cir.1992) ............................19

*McInnis v. Duncan, 697 F.3d 661, 665 (7th Cir. 2012)* ....................................24, 25

*Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008)................................20

*Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016),
cert. denied, 16-1418, 2017 WL 2339748 (U.S. Oct. 2, 2017)................19, 21

*Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014)..........................21, 22, 24, 25, 26

*Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909 (7th Cir. 2015),
reh'g denied (Jan. 23, 2015) ...............................................................20, 21, 22

*Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 794 (7th Cir. 2009) ...........20, 22

*Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 778 (7th Cir. 2013)............................................19

*Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) ............................................21

*Sutton v. Pfister*, 834 F.3d 816, 821 (7th Cir. 2016)............................................20

*United States v. Boyce*, 742 F.3d 792, 796 (7th Cir. 2014) ............................................23, 28

*United States, 8136 Dobson St., Chicago, Ill.,* 125 F. 3d 1076, 1084 (7th Cir. 1997) ................23

*United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994)....................................25

*United States v. Socony-Vacuum Oil Co.*,
310 U.S. 150, 84 L.Ed. 1129, 60 S.Ct. 811, 851 (1940)............................................29

**STATUTES**

28 U.S.C. § 1343 ............................................4

42 U.S.C. § 1983 ............................................4

42 U.S.C. § 1985 ............................................4

28 U.S.C. § 1367 ............................................4

Fed. R. Civ. P. 59(a) ............................................5

Rule 60(b)(3)............................................5

28 U.S.C. § 1291 ............................................5

Rule 37(c)............................................12

Fed. R. Civ. P. 51(d)(2) ............................................28

## JURISDICTIONAL STATEMENT

Defendant-Appellee, William Szura, states that the Appellants' jurisdictional statement is not complete and correct in accordance with Fed. R. App. P. 28(a)(4), Fed. R. App. P. 28(b) and submits the following:

Plaintiffs Kelly Fuery, Debra Sciortino and Nicole Tomaskovic initiated the proceedings in the district court asserting jurisdiction under 28 U.S.C. § 1343 for claims arising under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 in addition to state law claims pursuant to 28 U.S.C. § 1367. R. 1. The case was initially stayed pending the Plaintiffs' criminal trial for battery and was reinstated after their acquittal on September 30, 2008. R. 54.

The case was initially assigned to The Honorable Judge William J. Hibbler and was eventually transferred to The Honorable Judge Ealine E. Bucklo. R. 15. Judge Hibbler entered several protective orders beginning in June 2009, protecting confidential material exchanged in discovery between the parties. R. 118. The May 7, 2010, protective order covered videotaped depositions of Defendants or other law enforcement officers, "including any content, portion of their content and any images or sound recorded on the videotapes at any time whether on or off the record during the depositions whether in its original or altered form." R. 145. The October 6, 2010, Order designated the IPRA documents as confidential. R. 169.

Judge Bucklo bifurcated the Plaintiffs *Monell* claim against the City on October 15, 2012. R. 212. The matter was reassigned to The Honorable Sara L. Ellis for trial on July 14, 2014. R. 317. Plaintiffs were represented by Dana L. Kurtz from the inception of this case until her withdrawal post-trial R. 3; R. 451.

On December 17, 2015, the jury returned a verdict in favor of Tomaskovic against Szura on one count of excessive force and answered a special interrogatory finding Szura to be acting

within the scope of his employment with the City of Chicago.  R. 420.  The jury awarded Tomaskovic $260,000.00 in compensatory damages.  R. 420.  The jury returned a verdict against the Plaintiffs and in favor of all Defendants on all other claims.  R. 420.

Plaintiffs filed their Fed. R. Civ. P. 59(a) motion for a new trial on February 3, 2016.  R. 432.  The City filed a motion under Rule 50(b) for judgment notwithstanding a verdict or other relief under Rule 60(b)(3) seeking judgment on Tomaskovic's execessive force claim, R. 431, which Szura joined.  R. 429.  Szura filed his motion to join the City's renewed motion for sanctions on April 13, 2016.  R. 463.  After being granted extensions, Plaintiffs' responded with a full brief on June 3, 2016.  R. 480.

On September 29, 2016, Judge Ellis entered a thirty-one page Opinion and Order exercising the inherent authority of the court to sanction plaintiffs and their trial attorney Dana L. Kurtz for their bad-faith conduct at trial.  R. 488.  On September 30, 2016, the district court entered judgment in favor of Szura and the City of Chicago and against Plaintiffs Fuery, Sciortino and Tomaskovic on all claims.  R. 491.  The Plaintiffs' appeal the district court's Order imposing sanctions while Dana L. Kurtz did not appeal.  R. 494.  This court has jurisdiction over this appeal from the district court's final judgment disposing of all claims under 28 U.S.C. § 1291.

## **ISSUES PRESENTED**

1.    Whether the district court had jurisdiction to enter a post-trial judgment against the Plaintiffs under the court's inherent authority to impose sanctions on litigants for the bad-faith conduct of the litigants and their attorney at trial.

2.    Whether the district court's finding that Plaintiffs and their attorney engaged in willful and bad faith misconduct is supported by a preponderance of the evidence.

3.    Whether the Plaintiffs and their attorney had adequate notice and an opportunity to respond before the district court's imposition of judgment as a sanction under the court's inherent authority.

4.    Whether the Plaintiffs' motion for a new trial is rendered moot by the entry of judgment against Plaintiffs.

5.    Whether the district court committed trial error that affected the outcome of the trial.

## STATEMENT OF THE CASE

Szura states that the Appellants' Statement of the Case is incomplete.

**The Expressway Incident.**

William Szura had completed his tour of duty as a Chicago Police Officer on June 24, 2007, and was on his way home traveling northbound on Interstate 55 when he was confronted by an aggressive motorist and unruly passenger. R. 504, Tr. 151; 233. In an effort to deescalate the situation, Szura curbed his vehicle onto the shoulder of the expressway. R. 504, Tr. 187; 268. The aggressive motorist, Fuery, pursued Szura onto the shoulder in her GMC Yukon and stopped her vehicle directly behind Szura's vehicle. R. 504, Tr. 186-87. Fuery testified she was forced onto the shoulder by Szura's vehicle. R. 505, Tr. 453-56; R. 506, Tr. 507; R. 507, Tr. 730-37. Fuery and her passenger Debra Sciortino exited their vehicle and initiated a verbal and physical altercation with Szura. R. 504, Tr. 186-87.

After realizing the motorist had followed him onto the shoulder, Szura also exited his vehicle to investigate, at which time he testified Fuery approached him yelling obscenities before striking him in the face. R. 504, Tr. 188-89. Szura testified that after Sciortino grabbed his chest he moved his arm to break her hold. R. 504, Tr. 188-89. As Szura witnessed Fuery reaching into the center console of her truck he un-holstered his weapon and identified himself as a police officer. R. 504, Tr. 189-90. Upon confirming Fuery had not armed herself, Szura testified he returned his gun to its concealed holster. R. 504, Tr. 189-90. Fuery and Sciortino began grabbing and hitting him while he tried to keep his distance. R. 504, Tr. 190-92.

Fuery testified Szura approached her screaming and pointed a gun in her stomach, to which she replied, "What are you gonna do, shoot me?" R. 505, Tr. 456. Sciortino testified she yelled, "He's got a gun" although she did not see a gun at that time. R. 507, Tr. 731-32. After

7

she ran up to get in between Fuery and Szura, Sciortino testified she believed she was struck by Szura on the right side of her face, tumbling into traffic, striking her head and going unconscious.  R. 507, Tr. 799.

**Arrival of Tomaskovic**

Nicole Tomaskovic parked her car at a nearby accident investigation site and walked over to Fuery and Szura's vehicles.  R. 507, Tr. 906.  Szura testified Tomaskovic struck him from behind upon her arrival knocking him into the lanes of traffic, at which time all three women continued to strike him while on the ground.  R. 504, Tr. 192-93.  After Fuery fled the scene, Szura testified he was able to control the situation until the Illinois State Police arrived.  R. 504, Tr. 196-97.  Tomaskovic testified that Szura didn't say anything to her when she approached, but claims that after she ordered Szura to stay in his car, he attacked her.  R. 507, Tr. 908-09.  Fuery, Sciortino and Tomaskovic were each arrested and processed for battery against Szura.  R. 508, Tr. 1163-64; R. 508, Tr. 1217; R. 509, Tr. 1232-60; R. 509, Tr. 1331-42; R. 509, Tr. 1368-78.

**Pre-Trial Proceedings on Motions *in limine* and Exhibits**

During the designated pre-trial conference on December 1, 2015, the court warned all attorneys that if motions *in limine* were violated she would issue sanctions.  R. 502, Tr. 5.  The court's December 4, 2015, exhibit Order stated, "Should counsel find themselves unable to abide by the court's orders, the court will impose sanctions going forward."  R. 396.

**Plaintiffs' Motion *in limine* No. 1 to Bar Evidence of Plaintiffs' Past Arrests and City's MIL No. 19 to Bar Criminal History.**

Defendants did not object to Plaintiffs' motion, and the court granted the motion, based upon Plaintiffs representation they did not intend to introduce such information and would not attempt to.  R. 387 at 1; 13.  On direct exam by Kurtz, Sciortino testified she did not have any

prior arrests or convictions and the court sustained counsel for the City's objection on the basis of the motions *in limine*.  R. 507, Tr. 760.

**City's Motion *in limine* No. 1 and 21 to Bar Evidence Relating to Internal Investigations of Defendant Szura, IPRA Investigation and Expert Testimony on *Monell* Issues.**

The court granted City's MIL No. 1 finding that any internal investigations through IPRA were only relevant to the Plaintiffs' *Monell* claims, which had been bifurcated.  R. 387 at 1. City's MIL No. 20 was also granted barring reference to IPRA and expert testimony on *Monell* issues.  R. 387 at 14.

Kurtz handed Trooper DeAvila, while he testified, a document she proceeded to identify in front of the jury as 'IPRA0007' in violation of MIL No. 1 and MIL No. 21.  Kurtz claimed inadvertent mistake, gaining another reprimand from the district judge, "My point is that this is a continuing pattern, right, where I make rulings on motions and then you violate the rulings?".  R. 508, Tr. 1129-30.  The court admonished, "…its getting to the point where I'm at a loss…enough is enough".  R. 508, Tr. 1129-30.

**The City's Motion *in limine* No. 3 to Bar Evidence of Failure to Arrest or Criminally Charge Defendant Szura.**

The court granted the City's MIL No. 3 barring testimony from any witness that any officers failed to arrest, initiate criminal charges, file a complaint against Szura or give him a breathalyzer.  R. 387 at 7.  Kurtz was specifically directed by the court her testimony could not be, "because they wouldn't let us press charges against Szura or file a complaint against Szura.  I just want that to be clear."  R. 505, Tr.  468.  Kurtz proceeded to question Tomaskovic and Tomaskovic testified she told an Illinois State Trooper she wanted to press charges and then was arrested.  R. 507, Tr. 917-18.

**The City's Motion *in limine* No. 10 to Bar Evidence About Plaintiffs "Waiting For Their Day in Court".**

9

The court granted the City's MIL No. 10 precluding comments, that they have been "waiting for their day in court," that the trial, or from making other similar comments or arguments. R. 387 at 10. On direct examination by Kurtz, the Plaintiffs' expert Dr. Fitzgerald testified she evaluated the Plaintiffs' twice because, "the case was going on so long, years were passing..". R. 387 at 10.

**The City's Motion *in limine* No. 13 to Bar Tomaskovic's "Day In The Life" Video.**

The court granted the City's MIL No. 13 barring a video of Tomaskovic immediately after her back surgery finding it did not fairly represent facts with respect to the impact of the injuries. R. 387 at 11. On the evening of December 8, 2015, images from the 'Day In The Life' Video of Tomaskovic appeared in the Chicago Tribune online article, in conjunction with 911 Calls that were ruled inadmissible earlier that day. R. 505, Tr. 312.

**The City's Motion *in limine* No. 15 to Bar Plaintiffs and Other Lay Witnesses From Testifying as to Medical Diagnoses or Other Medical Terminology; and MIL No. 16 to Bar Plaintiffs from Testifying as to Statements and Diagnoses Made by Medical Providers.**

The court reserved ruling on City's MIL No. 15 which sought to bar Plaintiffs from using medical terminology to describe their alleged injuries; testifying regarding the causation of the same; and MIL 16 barring testimony as to statements or diagnosis from medical providers. R. 387 at12. Tomaskovic testified she had a herniated and a bulging disc, psoriasis, rheumatoid arthritis and required a toe fusion together due to the altercation, which placed her in initial state of shock. R. 507, Tr. 931-32; R. 508, Tr. 987-88. The court sustained Defendants' objections. R. 507, Tr. 931-32.

**City's Motion *in limine* No. 20 to Bar Testimony as to Scope of Employment.**

In granting City's MIL No. 20, the court barred testimony from any witness that Szura was acting within the scope of his employment or used excessive force. R. 387 at 14. Mr. Stine

violated the City's MIL No. 20, verbatim, testifying Szura was acting in the scope of employment was for them to determine. R. 510, Tr. 1519-20.

**The Court's Notice to Kurtz of Misconduct and Potential for Sanctions**

During the designated pre-trial conference on December 1, 2015, the court warned all attorneys if motions *in limine* were violated she would issue sanctions. R. 502, Tr. 5. The court told Kurtz during a sidebar that she will not try the case for her and admonishes Kurtz to conform her conduct appropriately or live with her mistakes at trial. R. 504, Tr. 256.

After the jury is excused on the second day of trial, Kurtz says she has a "housekeeping matter" and attempts to have 911 calls from an unknown caller "automatically admitted" into evidence because "some judges do that". R. 504, Tr. 273. Szura objected to the admission of the 911 tapes and the court warned Kurtz: "And, Ms. Kurtz, I have to say, you are really pushing the limit of what's appropriate, of what's expected of you, and in particular of my patience." R. 504, Tr. 276-77. Judge Ellis warned Kurtz regarding the Motions *in limine*, "And if you walk into rulings on motions *in limine* like you did today, where you asked specific questions calling -- that include inadmissible hearsay in those questions, I will speak to you in front of the jury, and I will sanction you. So, we understand where we are going for the rest of this trial?" R. 505, Tr. 279-80.

On the fifth day of trial, the district judge admonished Kurtz conduct at trial, "I have a hard time believing you are not playing fast and loose and playing to win here and being unethical." R. 507, Tr. 923. The district judge stated, "And I am going to spend the weekend thinking about how this trial has been going and what's been happening so far and whether there should be any sanctions, up to and including a mistrial, because I've had enough. This has

pushed me over the line. I have a lot of patience and a lot of tolerance, and I'm done. I'm done with the funny business." R. 507, Tr. 924.

Following Tomaskovic's *voir dire*, the court admonishes Plaintiff's counsel, that the court found Tomaskovic was not being honest to the court's question about the motions *in limine*. R. 507, Tr. 943.

When questioned about her painting business, Tomaskovic again becomes non-responsive, answering, "I can't answer yes or no" to numerous questions in succession before finally answering contradictory to the information contained in her medical records and testified to by her orthopedic surgeon, Dr. Zindrick. R. 508, Tr. 1016-18.

After finding both Kurtz and Fuery provided inconsistent testimony to the court regarding the destruction of Fuery's handwritten notes, Judge Ellis reserves ruling on the City's motion for sanctions under Rule 37(c), admonishing Kurtz again "And I will say Ms. Kurtz, this isn't your first rodeo, and this has been an issue previously in other cases." R. 506, Tr. 621.

The court instructs Tomaskovic that Kurtz' violation of the rules can affect Tomaskovic "And what has occurred during this trial is that one of your attorneys, at least as I have been conducting this trial, has not been playing by the same rules that everybody else has to play by. So that's my concern." R. 507, Tr. 947-48.

**Plaintiffs claimed damages**

Fuery, Sciortino and Tomaskovic all were sent to be evaluated by Dr. Fitzgerald at the direction of Kurtz in support of mental or emotional damages. R. 506, Tr. 640.

Sciortino admits that she made inconsistent statements about the way Szura allegedly struck her under oath. R. 507, Tr. 851. Mid-trial Kurtz submitted a proposed summary of

medical bills which the City notes listed every medical bill Tomaskovic had since 2007, including treatment for an un-related toe fusion. R. 507, Tr. 944-45.

**Fuery's Handwritten Notes**

Fuery testified she took notes of what happened the day after the occurrence. R. 506, Tr. 588-89. Fuery left her notes with Kurtz at their meeting a few days later. R. 506, Tr. 588-89. Following Attorney Kurtz objection, the court clarified the question for Fuery to which Fuery affirmed she gave the notes to Kurtz. R. 506, Tr. 590. At sidebar Kurtz states she directed the Appellants to take notes for her before their meeting. R. 506, Tr. 593. Attorney for the City of Chicago states Fuery testified in her deposition she was told to take notes by Illinois State Trooper DeAvila. R. 506, Tr. 594.

After the court tells the attorneys she will ask Fuery about her notes, Kurtz admits she has notes from Fuery, claiming she directed Fuery to write the notes. R. 506, Tr. 595-96. The handwritten notes had never previously disclosed or identified. R. 506, Tr. 595-96.

Upon questioning by the court, Fuery testified she made the notes after she woke up the day after the occurrence and that nobody told her to make notes before or after. R. 506, Tr. 598..

The court finds that the notes aren't privileged. R 506, Tr. 601. Kurtz states she has notes from Fuery she directed Ms. Sciortino to write. R. 506, Tr. 601.

Kurtz states the notes were never requested to be produced by Defendants in discovery. R. 506, Tr. 604. Following adjournment, the court reviewed the production requests from Defendants and the court finds Fuery's notes are responsive to at least four requests for production. R. 506, Tr. 607. Kurtz read Fuery's deposition testimony wherein Fuery stated she threw the notes out before the lawsuit was filed. R. 506, Tr. 611. The City moved for Sanctions

under Rule 37(c) stating the importance of Fuery's notes in light of the number of times Fuery had been impeached regarding her interaction with Szura on the expressway.  R. 506, Tr. 618.

The court notes that both Fuery and Kurtz' statements regarding the destruction of Fuery's handwritten notes to the court are inconsistent. R. 506, Tr. 615-16.  After re-taking the stand, Fuery testified she didn't talk to anyone about her testimony.  R. 506, Tr. 623.  Fuery then testifies she threw her handwritten notes out contradicting her sworn testimony to the court.  R. 506, Tr. 625; 702.

**Tomaskovic's *in limine* Questioning by the Court**

After numerous violations of the *in limine* rulings, Judge Ellis ordered the Jury to leave and questioned Tomaskovic under oath regarding whether or not Kurtz had advised her of the rulings.

| | |
|---|---|
| THE COURT: | Were you instructed at all by your attorney about what you could say or not say during the trial? |
| THE WITNESS: | I thought I recalled, I'm sure she said something about the criminal case, but I -- I'm telling my story.  I'm not thinking about that.  Am I supposed to be telling the truth or not, the whole truth of what happened or not?  I don't know where that stops and begins for you. |
| THE COURT: | Well, so, you know, the way that a trial works, we have to present evidence and certain legal rules. |
| THE WITNESS: | I get that, but I don't understand all the stipulations. |
| THE COURT: | So some things come into evidence, and then some things I've ruled based on the law can't come in.  And so what I'm asking you is did your attorneys go over those things with you? |
| THE WITNESS: | No, not specifically. |
| THE COURT: | Okay. |
| THE WITNESS: | That I can recall.  I don't remember going over and saying you can't say that I want to press charges. |
| THE COURT: | Were you ever instructed by your lawyer that you weren't allowed to say that? |
| THE WITNESS: | No.  R. 508, Tr. 938-39. |

Tomaskovic returned after leaving the courtroom with Kurtz and claimed she didn't understand the Judge's question and that Kurtz did tell her about the rulings.  R. 507, Tr. 946.

14

The court then put on the record that at the end of trial she questioned Tomaskovic regarding whether or not she had been advised by her attorneys she couldn't say she wanted to press charges against Szura, that the court cleared the courtroom of everyone but the attorneys, spoke to the attorneys, that only Kurtz left the courtroom and after a period of time Tomaskovic came back and asked to speak to the court.  R. 507, Tr. 951.

**Plaintiffs' Testimony Regarding Poverty and Lack of Insurance**

On direct examination, Kurtz asks Tomaskovic if she has insurance and the court sustained Defendants' objections.  As the court correctly noted, "Whether or not she has insurance is irrelevant.  And you know better, and yet you asked it anyway."  R. 507, Tr. 930. Kurtz improperly elicited Tomaskovic's claimed medical damages in front of the jury and Tomaskovic answers over sustained objections claiming "Over $400,000.00".  R. 507, Tr. 937. Tomaskovic volunteered that she also had liens but was directed to stop talking by Kurtz after answering, "from this whole case".  R. 508, Tr. 991.

Tomaskovic, Sciortino and Fuery all hired the same criminal attorney for $5,000.00 and each still owes $4,000.00.  R. 507, Tr. 763; R. 507, Tr. 822; R. 507, Tr. 930.

When asked if she had been to visit a mental health counselor before, Sciortino replies, "I had no insurance so, no, I didn't go to her prior."  R. 507, Tr. 822.

**Fuery's Improper Testimony**

Fuery testified at trial Szura never hit her on the left or right side of her face, just the back of her head although she never saw him do it.  R. 506, Tr. 567.  While under oath in the criminal proceedings, Fuery testified Szura struck her on the right side.  R. 506, Tr. 569-70.  During her deposition testimony, Fuery testified Szura hit her on the left side.  R. 506, Tr. 569-70.  Fuery

then testified at trial she did get hit on the left side and not on the back of the head, directly.  R. 506, Tr. 573.  Fuery admitted to lieing under oath during her criminal trial,

> Q:    Okay.  So when you testified in criminal court about it being on the right side, that wasn't true, was it?  That wasn't true, was it, Ms. Fuery, yes or no?
> A:    No. R. 506, Tr. 574.

Fuery's signed and verified Answers to Interrogatories state Fuery was struck by Szura across the back of the neck.  R. 507, 723.

Fuery testified regarding inadmissible hearsay as to what various officers said to her and was admonished by the Judge on hearsay testimony and waiting to answer questions until the Judge rules on the objections.  R. 506, Tr. 494; R. 506, Tr. 496-502.

Fuery became non-responsive to questions by Defense counsel regarding the amount of her alcohol consumption the day of the Parade,  R. 505, Tr. 534-39; traffic conditions on the day of the occurrence, R. 505, Tr. 541-57; and her interaction with Szura.  R. 505, Tr. 564-65. Following a series of impeachments regarding the injuries she allegedly sustained, Fuery became non-responsive requiring the court to direct her to answer numerous times.  R. 506, Tr. 571-72; R. 507, Tr. 705; 723-24.

**Sciortino's Improper Testimony**

Sciortino testified at trial Szura did not stop his car on the expressway in front of the Fuery and Sciortino while testifying he did during her criminal trial.  R. 507, Tr. 785.

Sciortino refused to answer defense counsel's cross-examination questions prompting the court to direct her to answer questions.  R. 507, Tr. 845-851; R. 507, Tr. 776-85.

Kurtz repeatedly elicited hearsay testimony from Sciortino, R. 507, Tr. 744; R. 507, Tr. 750-752.  After Tomaskovic's *voir dire* on *in limine* rulings, Ms. Sciortino addressed the court, "Mine would literally be the same, that I did hear.

| | |
|---|---|
| THE COURT: | Okay. |
| MS. SCIORTINO: | I never put on the record, though, that we weren't allowed to press charges.  Mine was that I was told not to give diagnoses like medical terms.  You could just be general. |
| THE COURT: | So were you ever instructed that you were not to say that you asked to press charges? |
| MS. SCIORTINO: | I-- I wasn't, uh-- |
| THE COURT: | Did you get that instruction from Ms. Kurtz? |
| MS. SCIORTINO: | I -- it was -- yes, it was a whole bunch of restrictions.  However, don't believe I ever testified that he did say that, so mine was pretty much the medical side of things.  But, yes, there was a lot of rules.  R. 507, Tr. 952-53. |

**Tomaskovic's Improper Testimony**

Tomaskovic testified she told the 911 operator Szura pushed one of them into oncoming traffic although she did not see it.  R. 508, Tr. 980-81.  Contrary to her testimony, Tomaskovic testified at her criminal trial that nobody told her Szura had pointed his gun at them.  R. 508, Tr. 984.

Tomaskovic claimed she required back surgery due to the altercation. R. 507, Tr. 931-932.  Kurtz then asks her what was the surgery to which Tomaskovic replies with medical diagnosis testimony, stating she had a herniated and a bulging disc, the court sustained the City's objection for violation of the motion *in limine*.  R. 507, Tr. 932.  Tomaskovic testified she sustained psoriasis, rheumatoid arthritis and a fusion of her toes as a result of her altercation with Szura.  R. 507, Tr. 935.  Kurtz then asked Tomaskovic how much she owed in medical bills, although the court sustained defense counsel's foundation objection, Tomaskovic answered anyways claiming "Over $400,000.00".  R. 507, Tr. 937.

Tomaskovic refused to answer yes or no questions, instead, interjecting irrelevant narrative consistently garnering sustained objections, to which the Judge responded with instrucitons.  R. 508, Tr. 994-95.

17

In response to being asked what she meant when she told the 911 operator Szura was posing as a police officer, Tomaskovic responded only talking about Szura.  R. 507, Tr. 905. The court sustains defense counsel's objection as non-responsive and directs Tomaskovic to answer the question asked of her.  R. 507, Tr. 905.  Tomaskovic proceeded to talk through sustained objections.  R. 507, Tr. 917.

Following an impeachment on Tomaskovic's alcohol consumption, the court had to direct Tomaskovic to stop providing answers when no question was pending.  R. 508, Tr. 971.  At the beginning of another impeachment, defense counsel asked Tomaskovic if anything would refresh her recollection, to which she replied, "I'm sure you have something."  R. 508, Tr. 971.

## SUMMARY OF ARGUMENT

It is well settled the district court had jurisdiction to enter judgment against the Plaintiffs under the inherent authority of the court to sanction litigants for willful and bad faith misconduct in litigation.

The Plaintiffs and their attorney engaged in bad-faith misconduct and abuse of the judicial process warranting the exercise of the district court's inherent authority to impose post-trial sanctions in the form of an adverse judgment on all claims.

Each litigant exhibited contumacious bad-faith conduct through false testimony under oath, violations of motions *in limine*, and interjecting prejudicial testimony to obtain an unjust result in the face of the court's numerous warnings.

The evidentiary facts show beyond a preponderance of the evidence that Plaintiffs willfully exhibited near identical misconduct and bad faith throughout trial justifying the district court's imposition of judgment as a sanction under the court's inherent authority.

Even with the benefit of all the prejudicial testimony and violations of evidentiary rulings the Plaintiffs were able to introduce at trial, Fuery and Sciortino were unable to obtain a verdict. Accordingly, any claimed trial error now alleged would not affect their outcome.

The Plaintiffs and Attorney Dana Kurtz are jointly accountable for the willful and contumacious misconduct that occurred. The district court properly exercised the inherent authority of the court to enter judgment against all plaintiffs on all counts as a sanction for the parties bad faith and willful misconduct.

## ARGUMENT

### I.     Standard of Review

Defendant-Appellee, William Szura is not in agreement with the Appellants' Standard of Review.

A federal court of appeal reviews a district court's imposition of sanctions under its inherent power for abuse of discretion. *Link v. Wabash R. Co*., 370 U.S. 626, 630, 82 S. Ct. 1386, 1389, 8 L. Ed. 2d 734 (1962). A party meets its burden under this standard only when it is clear that no reasonable person would agree with the trial court's assessment of the appropriate sanctions. *Marrocco v. Gen. Motors Corp*., 966 F.2d 220, 223 (7th Cir.1992).

Any exercise of the district court's discretion will be upheld if it could be considered reasonable, even if the reviewing court might have resolved the question differently. *Scott v. Chuhak & Tecson, P.C*., 725 F.3d 772, 778 (7th Cir. 2013). Where the district court exercises its inherent authority to impose sanctions for bad-faith and willful conduct in a civil case involving money damages the decision need only be supported by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 781 (7th Cir. 2016), cert. denied, 16-1418, 2017 WL 2339748 (U.S. Oct. 2, 2017).

Evidentiary rulings of the trial court are reviewed for an abuse of discretion. *Aliotta v. National Railroad Passenger Corp.*, 315 F.3d 756, 759 (7th Cir. 2003). A district court by definition abuses its discretion when it makes an error of law. *Sutton v. Pfister*, 834 F.3d 816, 821 (7th Cir. 2016).

## II.     The district court had jurisdiction to enter post-trial judgment against Tomaskovic, Fuery and Sciortino as a sanction under it's inherent authority to address Plaintiffs' and their attorney's willful and bad faith conduct.

The Supreme Court has made clear sanctions may be imposed years after a judgment on the merits. *Chambers v. NASCO*, 19 Id., at 395–396, 110 S. Ct., at 2455–2456. As the Supreme Court clearly illustrates in *Chambers*, the district court had jurisdiction to impose sanctions post-trial under its inherent authority. Though particularly severe, the sanction of dismissal is within the court's discretion. *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008).

Dismissal is appropriate where a party has displayed fault, bad faith, or willfulness. *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 794 (7th Cir. 2009). The district court's election of judgment in favor of Defendants on all claims was an appropriate sanction. *Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909 (7th Cir. 2015), reh'g denied (Jan. 23, 2015).

The Plaintiffs' reliance on *Goodyear Tire & Rubber Co.*, is misplaced and not applicable here. In *Goodyear Tire & Rubber Co.*, the Supreme Court only considered a federal court's inherent authority to monetarily sanction an *innocent* litigant for bad-faith conduct by ordering it to pay the opposing party's attorneys fees. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184, 197 L. Ed. 2d 585 (2017) (emphasis added). *Goodyear* does not address or affect the district court's ability to impose sanctions in other regards.

## III.     The district court's determination Plaintiffs' repeated willful abuse of the judicial process warranted the imposition of judgment against Plaintiffs as a sanction was a proper exercise of discretion under the court's inherent authority and is supported by a preponderance of the evidence.

The district court's exercise of its inherent authority to impose sanctions for bad-faith and willful conduct need only be supported by a preponderance of the evidence and will not be disturbed absent an abuse of discretion. *Ramirez*, 845 F.3d 772, 781 (7th Cir. 2016), *cert. denied*, 16-1418, 2017 WL 2339748 (U.S. Oct. 2, 2017).

Perjury is among the worst kinds of misconduct and can justify judgment as a sanction under the court's inherent authority. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014).

Fuery admitted she provided false testimony while under oath at the criminal trial regarding her altercation with Szura, specifically provided four different versions of her encounter. R. 506, Tr. 569; R. 507, Tr. 567-73; R. 506, Tr. 635-36. Likewise, Sciortino admitted she provided inconsistent testimony about her physical encounter with Szura under oath. R. 507, Tr. 851.

This Court has upheld the district court's sanction of dismissal where the litigant had, "tried, willfully and in bad faith, to deceive the court and then, when questioned about it, gave dishonest and implausible explanations." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015). In *Secrease* the court affirmed the district court's imposition of dismissal under the inherent authority of the court for the litigants dishonest and implausible explanations for discovery violations. *Secrease.*, 800 F.3d 397, 401 (7th Cir. 2015).

In response to the court's inquiry of the destruction of Fuery's handwritten notes, Kurtz provided numerous varying excuses, claiming privilege and even blaming defendants while her client maintained she gave Kurtz the notes. R. 506, Tr. 593-604. Notably, Kurtz was sanctioned for identical misconduct in *Rojas v. Town of Cicero, Ill*., only months before trial. In *Rojas*, the court found Kurtz withheld her client's bankruptcy filing, initially denying any

knowledge before ultimately admitting she withheld the information even after she found out. *Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 908 (7th Cir. 2015), reh'g denied (Jan. 23, 2015).

Tomaskovic repeatedly violated the *in limine* rulings, specifically: No. 3 (prohibiting testimony she wanted to press charges); No. 15 (prohibiting medical diagnosis and terminology) and No. 16 (prohibiting statements and diagnosis from providers).  R. 507, Tr. 917-18; 931-32; R. 508, Tr. 987-88.  At sidebar, Kurtz denied culpability, claiming she advised Tomaskovic of the *in limine* rulings although again, Kurtz client denied being advised of the *in limine* rulings. R. 507, Tr. 938-43.

In *Salmeron*, the court found that the district court judge showed extensive patience with the litigants "dilatory" and "defiant" conduct through litigation, but when faced with more flagrant offense of leaking discovery materials, the judge was "certainly entitled to say enough is enough." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 798 (7th Cir. 2009).  Following the district court's "final warning", the plaintiff's attorney in *Salmeron* breached an oral agreement with opposing counsel and leaked a document obtained through discovery to three separate sources.  *Id*.

In this case, Kurtz was admonished of her inappropriate conduct numerous times in the first two days of trial for failure to follow orders, improper questioning of a witness and walking into *in limine* rulings.  R. 504, Tr. 256; R. 504, Tr. 273-77; R. 505, Tr. 279-80; R. 505, Tr. 276-78.  Following the second day of trial, a Chicago Tribune online article was published containing excluded evidence and unfiled pre-trial discovery had unsuccessfully attempted to have moved in "automatically" mere hours before.  R. 504, Tr. 285-87.  The court questioned all attorneys regarding the disclosure, Kurtz stated her only communication with the media was "no comment" and swore to the court she didn't give the journalist the materials.  R. 504, Tr. 288.

22

After an entire morning of investigation, including questioning the journalist who asserted source privilege, Kurtz continued to maintain her denials, swearing to the court she had nothing to do with it. R. 505, Tr. 307-08.

After a break, Kurtz admitted she provided the photograph of Tomaskovic's day in the life video in 2013. R. 504, Tr. 312. Kurtz eventually admits she talked to the journalist the night before unable to justify the discrepancy to the court. R. 505, Tr. 316.

Notably, counsel City of Chicago advised the Court that upon confronting Kurtz of the publication in the morning, he witnessed Kurtz leave the courtroom "to get better service" and return claiming the document marked with Plaintiffs' exhibit wasn't on the website. RTT. 291-92. Counsel also noted that the article was altered within the same timeframe Kurtz was outside the courtroom. R. 504, Tr. 291.

The fact a litigants bad-faith efforts did not have an effect on the outcome does not alleviate the district courts' inherent authority for "the effort imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly". *Rivera v. Drake*, 767 F.3d 685, 686–87 (7th Cir. 2014).

*Rivera* is particularly applicable in this case, Kurtz sat in defiance and watched a federal court judge conduct an investigation into the source of information while Kurtz knew she was the source.

As the Court held in *United States v. Dobson*, the Plaintiffs are bound by Kurtz actions, whether negligent or willful. *United States,* 125 F.3d 1076, 1084 (7th Cir. 1997). Only the Plaintiffs stood to gain by Kurtz' misconduct and they were made aware of the Tribune article and took no action. This is particularly true for Tomaskovic, whose photograph was published allegedly without her consent. Even absent their individual misconduct, the court's sanctions

were a proper exercise of discretion to curtail their attorney's misconduct. *United States*, 15 F.3d 632, 633 (7th Cir.1994).

Similarly to the Plaintiff in *Greviskes*, Plaintiffs in this case subverted the very purpose of the *voir dire* examinations through their later contradictory statements, thus engaging in further fraudulent misconduct. *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005).

The court acted within its discretion declining to employ, "progressive discipline" as to do so would allow each litigant an opportunity to disregard the rules. *McInnis v. Duncan, 697 F.3d 661, 665 (7th Cir. 2012)*. The appropriateness of lesser sanctions need not be explored if the circumstances justify imposition of the ultimate penalty - dismissal with prejudice. *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003).

Plaintiff's arguments lesser sanctions required consideration is disingenuous. Fuery, Sciortino, Tomaskovic and Kurtz were each individually warned during trial that their reprehensible infractions would not go unpunished and all four proceeded unfettered by the Court's warnings.

Where, as here, a litigant has submitted evidence to the court of their poverty, a district court could properly conclude, absent contumacious conduct, that the threat of a monetary sanction would probably not influence their behavior. *Rivera,* 767 F.3d 685, 687 (7th Cir. 2014).

Monetary sanctions were unavailable to the court to sanction Fuery, Sciortino and Tomaskovic. Kurtz repeatedly elicited testimony from each Plaintiff at trial as to their poverty. R. 506, Tr. 514-15; R. 507, Tr. 763; R. 507, Tr. 930-35. In addition to her criminal defense fees, Tomaskovic testified she had liens, owed medical bills of over $400,000.00 and lacked insurance. R. 507, Tr. 930-37; R. 508, Tr. 991. Tomaskovic's testimony was particularly

flagrant, as she refused to be hindered by even her own attorneys attempts to curtail her improper testimony. R. 507, Tr. 991. Lesser sanctions of barring testimony under Fed.R.Civ.P. 37(b) would operate as the functional equivalent of dismissal on Plaintiff's claims. *Rivera*, 767 F.3d at 687.

The concern for punishing innocent plaintiffs for their lawyers transgressions does not apply where the negligence is traceable to the plaintiffs themselves. *McInnis v. Duncan*, 697 F.3d 661 (7th Cir. 2012). A plaintiff's failure to comply with the court's orders interferes with the conduct of the litigation and justifies dismissal. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994).

As the court correctly noted, Tomaskovic's *voir dire* testimony regarding her preparation on the *in limine* rulings was a noteworthy example of Tomaskovic's disregard for sworn testimony and the court's authority. R. 507, Tr. 917-18; 938-39. Tomaskovic also volunteered medical diagnosis testimony in violations of MIL No. 15 and 16 claiming afflictions and serious surgical procedures she knew were not causally related to June 24, 2007, altercation. R. 507, Tr. 931-35; R. 508, Tr. 987-88. Tomaskovics's acquiescence to the submission of unrelated medical treatment also supports the district court's conclusion she was acting in willful compliance with her attorney's misconduct. R. 507, Tr. 944-45.

Sciortino presented prejudicial testimony regarding her lack of insurance as well as her alleged lack of a criminal history in violation of Plaintiff's MIL 1 City's MIL No. 19. R. 507, Tr. 822; R. 507, Tr. 760. Even the Plaintiffs' experts violated *in limine* rulings as well. (Dr. Fitzgerald re: MIL No. 11, R. 509, Tr. 1433). Mr. Stine violated the City's MIL No. 20 verbatim, testifying Szura was acting within the scope of his employment. R. 510, Tr. 1519-20.

25

Tomaskovic attempted to garner further sympathy from the jury by claiming she lost her ability to paint because of the occurrence.  R. 508, Tr. 1016-18.  Tomaskovic's own doctor testified she continued to run her painting business through 2010, and that Tomaskovic injured herself in work related accidents. R. 508, Tr. 1067-84. Consistent with *Rivera*, the district court's sanction of judgment against Fuery for misconduct is supported by a preponderance of the evidence.  *Rivera*, 767 F.3d 685, 686–87 (7th Cir. 2014).

After two weeks of a trial filled with dishonesty, disregard for the judicial process and repeated violations of the court's rules, the district court was well within its inherent authority to enter judgment for Defendants against Tomaskovic, Fuery and Sciortino.

## IV.    The Plaintiffs' were afforded notice of their misconduct, the opportunity to conform before judgment and a fair opportunity to respond to sanctions in their post-judgment motions affording adequate due process, although none was required.

In *Chambers*, the Court found the fact the litigant refused to be deterred in the face of the Court's warning, "does not render the District Court's action an abuse of discretion".  *Chambers*, 501 U.S. 32, 56, 111 S. Ct. 2123, 2138–39, 115 L. Ed. 2d 27 (1991).  As in Chambers, the Plaintiffs here proceeded through trial undeterred by the court's authority.

Plaintiffs and their attorneys were notified of the possible imposition of sanctions repeatedly, including but not limited to: (1) in the pre-trial rulings on motions *in limine* and exhibits R. 387; (2) after Kurtz asked to "automatically" admit exhibits R. 504, Tr. 276-77; (3) in response to *in limine* violations with the first witness R. 504, Tr. 279-80; (4) after the Tribune article investigation R. 507, Tr. 923-24; (5) by the Judge and Defendants after Tomaskovic's *voir dire* R. 507, Tr. 941-42; (6) in response Fuery's destruction of notes R. 506, Tr. 621; (7) in reserving ruling on Defendants' Motion for Sanctions, including dismissal; (8) in denying ISP's motion for a mistrial R. 508, Tr. 957; (9) when the court reserved ruling on Defendants' renewed

26

motion for a mistrial R. 508, Tr. 954; (10) in the City's post-judgment motion for sanctions and judgment R. 431; (11) at the post-judgment status hearing February 16, 2016, R. 488 at 28; and (12) the City's renewed motion for sanctions to which Szura joined R. 463.

Judge Ellis advised Tomaskovic personally that Kurtz was violating the rules and that the Plaintiffs are responsible for her misconduct.  R. 507, Tr. 947-48.

Consistent with the Supreme Court's holding in *Chambers*, Plaintiffs received notice throughout trial their misconduct would be sanctioned if they failed to conform their conduct to the rules of the Court and they proceeded undeterred therefore they may not assert their willful disregard as a basis for asserting an abuse of distraction.  *Chambers*, 501 U.S. 32, 56, 111 S. Ct. 2123, 2138–39, 115 L. Ed. 2d 27 (1991).

**V.      The district court's judgment against Plaintiffs' rendered their motion for a new trial moot leaving no case or controversy ripe for review.  Alternatively, the district court committed no legal error at trial in excluding the inadmissible 911 tapes and in the issuance of the spoliation instruction for the willful destruction of Fuery's contemporaneous, handwritten notes.**

Federal courts have no authority to rule where the case or controversy has been rendered moot. *Cornucopia Inst. v. U.S. Dept. of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009).  Courts of review will also ordinarily not consider issues that are not essential to the disposition of the causes before them.  *Condon v. Am. Tel. & Tel. Co., Inc.*, 136 Ill. 2d 95, 99, 554 N.E.2d 206, 208 (1990).  Since the district court entered judgment in favor of defendants dismissing the Plaintiffs' claims without deciding the post-judgment motions, there is no active case or controversy to act upon.

1.      **The 911 Calls**

Rulings on the admissibility of expert testimony are reviewable for abuse of discretion regardless of whether the testimony is admitted or excluded.  *General Electric Co. v. Joiner*, 522 U.S. 136, 139 L.Ed.2d 508, 118 S.Ct. 512, 517 (1997).

Plaintiffs acknowledge the purpose behind the present sense impression exception is the substantial contemporaneity of the event with the statement negates the likelihood for deliberate or conscious misrepresentation.  *United States v. Boyce*, 742 F.3d 792, 796 (7th Cir. 2014).  Both 911 calls were clearly made outside the realm of substantial contemporaneity as evidenced by the fact the callers could not accurately identify the gender parties or the number of cars present.

The risk of unfair prejudice in allowing the jury to determine who was who far outweighs any probative value the statements could be offered for.  The fact some form of physical altercation ensued was not in dispute.

Irrespective of the admissibility of the 911 calls, Plaintiffs have failed to offer any suggestion as to how the exclusion of the calls prejudiced them or how the 911 call would have affected the outcome below rendering the alleged error is harmless.

2.      **The Spoilation Instruction**

Federal Rule of Civil Procedure 51(d)(2) now allows for plain error review of the instructions.  *Ammons-Lewis v. Metropolitan Water Reclamation District of Greater Chicago*, 488 F.3d 739, 751 (7th Cir. 2007).

During the court's inquisition, Fuery maintained she wrote the notes for herself the day after and gave them to Kurtz.  R. 506, 588-89.  However, after lunch Fuery testified differently, claiming she threw them away herself, consistent with her attorney's position during the sidebar.  R. 506, Tr. 611.

Generally a party who fails to object to a spoliation instruction at the time it was presented at trial waives the argument on appeal. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 84 L.Ed. 1129, 60 S.Ct. 811, 851 (1940). Plaintiffs' failed to object to the spoliation instruction and did not tender a correct instruction at trial thereby waiving this argument. Plaintiffs' also failed to raise the issue in their Rule 59 Motion for a New Trial. R. 432, Tr. 1-17.

The Supreme Court has held that a party in a civil case is bound by its silence at trial, specifically, failing to object to comments made to a jury and then claiming the comments were improper or prejudicial. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 84 L.Ed. 1129, 60 S. Ct. 811, 851 (1940). Although the comments to the jury closing argument was proper, the Plaintiffs' failed to object at trial or raise the issue thereby waiving the issue on appeal as well.

## VI. Any claimed legal error committed at trial with regard to the 911 tapes and the spoliation instruction had no effect on the outcome of the proceedings below.

Plain error demands a showing not only that an error occurred which, in retrospect, is obvious, but also that the error, among other things, affected the substantial rights of the appellant. *Ammons-Lewis v. Metropolitan Water Reclamation District of Greater Chicago*, 488 F.3d 739, 751 (7th Cir. 2007).

Plaintiffs have failed to show how the 911 calls or the spoliation instruction affected the outcome of their case, therefore, any legal error was harmless and the courts judgment in favor of Defendants on all claims should remain undisturbed.

**CONCLUSION**

The court properly sanctioned the plaintiffs and their counsel within the court's inherent discretionary authority for their willful and deceitful misconduct.  The sanction was properly tailored for the type of misconduct that occurred repeatedly.  Finally, the court did not commit any trial error warranting a new trial for any Plaintiff.

GOTTREICH GRACE & THOMPSON
/s/ James E. Thompson
Attorney for the Defendant-Appellee,
William Szura

311 W. Superior Street
Suite 215
Chicago, Illinois 60654
(312) 943-0600

**CERTIFICATE OF COMPLIANCE WITH**
**F.R.A.P. RULE 32(a)(7), F.R.A.P. RULE 32(g) and CR 32(c)**

The undersigned, counsel of record for the Defendant-Appellee, William Szura, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font.  The length of this brief is 9,172  words.

Dated  November 6, 2017                    .

GOTTREICH GRACE & THOMPSON
/s/ James E. Thompson
Attorney for Defendant-Appellee,
William Szura

GOTTREICH GRACE & THOMPSON
311 W. Superior Street
Suite 215
Chicago, Illinois 60654
(312) 943-0600

31

**PROOF OF SERVICE**

The undersigned, counsel for the Defendant-Appellee, William Szura, hereby certifies that on November 6, 2017, I electronically filed the foregoing with the Clerk of the Court of the United State Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that they will be served through that system.

       Dated  November 6, 2017.


                        GOTTREICH GRACE & THOMPSON
                        /s/ James E. Thompson
                        **Attorney for Defendant-Appellee,
                        William Szura**


GOTTREICH GRACE & THOMPSON
311 W. Superior Street
Suite 215
Chicago, Illinois 60654
(312) 943-0600